850 So.2d 1019 (2003)
STATE of Louisiana, Appellee,
v.
Sean F. SMALL, Appellant.
No. 37,134-KA.
Court of Appeal of Louisiana, Second Circuit.
June 27, 2003.
*1020 Peggy J. Sullivan, Monroe, Mary L. Harried, New Orleans, for Appellant.
Sean F. Small, Pro Se.
Paul J. Carmouche, District Attorney, for Appellee.
J. Thomas Butler, Lea R. Hall, Assistant District Attorneys.
Before BROWN, WILLIAMS and CARAWAY, JJ.
WILLIAMS, Judge.
The defendant, Sean Small, was charged by amended bill of information with armed *1021 robbery, a violation of LSA-R.S. 14:64 and attempted second degree murder, a violation of LSA-R.S. 14:30.1 and 14:27. After a jury trial, the defendant was found guilty as charged. The trial court adjudicated defendant a second felony offender and imposed separate sentences of 50 years at hard labor without benefit of parole, probation or suspension of sentence for the armed robbery and attempted second degree murder convictions. These sentences were to be served concurrently. Defendant's motions for new trial, for post-verdict judgment of acquittal and reconsideration of sentence were denied. The defendant appeals. For the following reasons, we affirm the convictions, vacate the sentences for armed robbery and attempted second degree murder and remand for resentencing.

FACTS
On July 11, 2000, the elderly victim, Wilda Ritzheimer, walked out of the Brookshire's Food Store on Line Avenue in Shreveport carrying her purchase. Ritzheimer approached her automobile, a gold Cadillac, pressed the door lock and turned to open the car door. An assailant, later identified as the defendant, came up from behind Ritzheimer, grabbed her right hand, took her car keys and shot her with a .45 caliber handgun. Ritzheimer observed the gun in defendant's hand and asked, "Why are you doing this to me?" The defendant shot her a second time as she screamed for help. Ritzheimer later stated that the defendant never said a word to her during the crime and that she did not touch the defendant's gun in any way to cause the weapon to discharge.
The store's security guard, Keith Stewart, heard two gunshots and proceeded outside. He then heard another gunshot, which sounded muffled and saw an elderly woman struggling with a male, who entered a vehicle and started the ignition. As the defendant drove away in the victim's automobile, Stewart fired six rounds from his .38 caliber revolver toward the vehicle. Three spent .45 caliber shell casings and six spent .38 caliber shell casings were recovered from the crime scene during the subsequent police investigation. The victim's automobile was found in a parking lot with several bullet holes in the passenger side.
Another store employee, Bennico Canada, heard two gunshots and assisted Ritzheimer, who was transported to the hospital by ambulance. Ritzheimer suffered gunshot wounds through her left arm and side. One bullet entered just below her left elbow and exited the other side of her arm just above the elbow. The other bullet entered her left side below her ribs and exited through her back near the spine. The victim required surgery to remove her ruptured spleen and to stop the internal bleeding.
Subsequently, an anonymous Crime Stoppers tip reported that the defendant was present at a residence located in the west Shreveport area. Police Detectives Smith and Rudell responded to the residence and learned that defendant had fled on foot. After a search of the area, the detectives discovered defendant hiding under a vehicle in a nearby alley and arrested him without further resistance. The detectives did not question the defendant during the apprehension or while transporting him to the violent crimes bureau.
After being advised of his Miranda rights and signing a waiver card, the defendant gave an audio-taped statement to Shreveport Police Detectives Wray and Jeter. In his recorded statement, the defendant admitted that he approached the victim from behind and grabbed her car keys so that he could drive around in the automobile. The defendant stated that the *1022 gun accidentally discharged three times into the car, and that he drove away in the victim's automobile without her permission. Defendant said he sold the gun to an unknown male on the street. Defendant showed Detective Wray an abrasion on his thigh that appeared to be a graze wound.
The defendant was initially charged with armed robbery by bill of information, which was later amended to add the charge of attempted second degree murder. Both the defendant and defense counsel filed motions to suppress the defendant's recorded statement to police. After a hearing, the trial court denied the motions to suppress.
The jury found the defendant guilty as charged. The defendant's motions for new trial and post-verdict judgment of acquittal were denied. Subsequently, the trial court adjudicated defendant a second felony offender and sentenced him to serve 50 years at hard labor without benefit of parole, probation or suspension of sentence on each conviction. The sentences were ordered to be served concurrently with each other, and with the sentence imposed upon revocation of the defendant's probation. The trial court denied the motions for reconsideration of sentence filed by defendant and his counsel. The defendant appeals his convictions and sentences.

DISCUSSION
Reference to Defendant's Failure to Testify
The defendant contends the trial court erred in denying his motion for mistrial based upon remarks in the state's closing argument. Defendant argues that the prosecutor improperly commented on his decision not to testify in violation of his right against self-incrimination.
LSA-C.Cr.P. art. 770(3) provides:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
* * *
(3) The failure of the defendant to testify in his own defense;
* * *
In State v. Mitchell, 00-1399 (La.2/21/01), 779 So.2d 698, the supreme court stated the applicable law:
La.C.Cr.P. art. 770(3) provides that the trial court "shall" declare a mistrial when the prosecutor "refers directly or indirectly to ... the failure of the defendant to testify in his own defense...." The purpose behind art. 770(3)'s prohibition against such prosecutorial comment is to protect the defendant's Fifth Amendment right against self-incrimination by preventing attention being drawn directly or indirectly to the fact that the defendant has not testified on his own behalf. State v. Fullilove, 389 So.2d 1282, 1283 (La.1980); Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).
"Direct" and "indirect" references to the defendant's failure to take the stand are prohibited by article 770(3). State v. Johnson, 541 So.2d 818, 822 (La.1989). "When the prosecutor makes a direct reference to the defendant's failure to take the stand, a mistrial should be declared, and `it is irrelevant whether the prosecutor intended for the jury to draw unfavorable inferences from defendant's silence.'" Id. (citing Fullilove, 389 So.2d at 1284). When the reference to the defendant's failure to take the stand is not direct, this Court will inquire into the remark's "intended effect on the jury" in order to distinguish indirect references to the defendant's failure to *1023 testify (which are impermissible) from statements that are not (which are permissible, though not favored). Johnson, 541 So.2d at 822; Fullilove, 389 So.2d at 1284; State v. Jackson, 454 So.2d 116, 118 (La.1984). In order to support the granting of a mistrial, the inference must be plain that the remark was intended to focus the jury's attention on the defendant's not testifying. State v. Smith, 327 So.2d 355, 362 (La.1975) (on rehearing); State v. Reed, 284 So.2d 574, 576 (La.1973); State v. Howard, 262 La. 270, 263 So.2d 32 (1972).
During closing argument in the present case, the prosecutor referred to defendant's assertion in his recorded statement that he accidently shot the gun three times into the car. The prosecutor then stated:
It's not possible. It's a lie. It's a bad lie. It's easy to see through it. And the only reason he's lying to you is trying to cover up what his intent was.
The judge will tell you if any witness in this case has deliberately testified falselyand before I go on, I want to distinguish this: This is not testimony that I'm talking about. Sean Small didn't take the same oath that you saw everybody else take.
(Emphasis added.)
The defense requested a bench conference, after which the prosecution was allowed to continue to differentiate the defendant's taped statement, which was admitted as evidence, from trial testimony:
His statement was given in the Shreveport Police Department. But the instruction that the Court is going to give you is that if you believe that any witness in this case has deliberately testified falsely to any material fact for the purpose of deceiving you, then you are justified in disregarding the entire testimony of such witness as proving nothing and as not worthy of belief. You have the right to accept as true or reject as false the testimony of the witness, in whole or in part, as you are impressed with their truthfulness.
And the taped interview is not testimony, but the taped interview is evidence. And I think that that (sic) statement applies to evidence, and I think you can weigh the credibility of that statement just like the judge is going to tell you applies to any testimony that may have come in this case. And so I think you can take the parts out of it that ring true.
After closing arguments were concluded, the jury was charged and removed from the courtroom. The trial court denied defendant's motion for a mistrial.
A reasonable reading of the prosecutor's remark that "Sean Small didn't take the same oath" as everyone else demonstrates that the comment was not a general statement emphasizing that the state's evidence was unrebutted, but was a direct reference to defendant's failure to testify at trial. Pursuant to the statutory rule, when the prosecutor makes a direct reference to the defendant's failure to take the witness stand, a mistrial shall be declared, and it is irrelevant whether the prosecutor intended for the jury to draw unfavorable inferences from defendant's silence. Consequently, we must conclude the trial court erred in refusing to grant a mistrial. However, reaching this conclusion does not complete our analysis, which requires a determination of whether this trial error was harmless.
In Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the United States Supreme Court held that a Griffin v. California error (prosecutor's direct reference to defendant's failure to testify) is subject to a *1024 harmless error analysis on appeal and does not automatically require a reversal. State v. Moser, 588 So.2d 1243 (La.App. 1st Cir.1991). Thus, a violation of Article 770(3) is subject to a harmless error analysis. State v. Rodriguez, 01-2182 (La.App. 1st Cir.6/21/02), 822 So.2d 121, writ denied, 02-2049 (La.2/14/03), 836 So.2d 131. The proper analysis for determining harmless error is whether the jury's guilty verdict actually rendered in the particular case was surely unattributable to the error. Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993); State v. McArthur, 97-2918 (La.10/20/98), 719 So.2d 1037; Rodriguez, supra.
In the present case, the jury heard the victim's unequivocal testimony describing defendant as the assailant who took her car keys at gunpoint, shot her two times at close range and then drove away in her vehicle leaving her bleeding and seriously wounded. The victim testified that after the defendant shot her the first time, she looked down, saw the gun and pleaded no, why are you doing this to me? Defendant then raised his right hand and shot the victim a second time. He subsequently fled the scene, disposed of the weapon and tried to evade the police. The jury also heard defendant's recorded statement to police in which he admitted approaching the victim while armed with a handgun, taking her keys by force, firing the gun accidently and then driving away in the victim's automobile without her permission. The jury could have reasonably concluded that contrary to defendant's assertion, his actions both during and after the crime were not consistent with an accidental shooting.
The record contains compelling evidence from which the jury could infer that defendant intentionally shot the elderly victim twice at close range while committing an armed robbery. In addition, the prosecutor's comment in closing argument, while clearly improper, was relatively brief. Accordingly, we conclude that the verdict rendered in this case is surely unattributable to the prosecutor's improper reference to the defendant's failure to testify on his own behalf. Consequently, while we do not condone the prosecutor's statement, we cannot say that the court's refusal to declare a mistrial constitutes reversible error. The assignment of error lacks merit.
Suppression of Recorded Statement
The defendant contends the trial court erred in denying the motions to suppress his recorded statement to the police. Defendant argues that the state failed to prove that his confession was free and voluntary because he was not adequately advised of his Miranda rights.
In determining whether a ruling on a motion to suppress is correct, an appellate court is not limited to evidence adduced at the hearing on the motion but may consider pertinent evidence given at trial. State v. Daniels, 614 So.2d 97 (La. App. 2d Cir.), writ denied, 619 So.2d 573 (La.1993).
Before the state can introduce an inculpatory statement made in police custody, it bears the heavy burden of establishing that the defendant received a Miranda warning and that the statement was freely and voluntarily made, and not the product of promises, threats or duress. LSA-C.Cr.P. art. 703; LSA-R.S. 15:451; State v. Johnson, 36,014 (La.App.2d Cir.6/12/02), 821 So.2d 652; State v. Hills, 354 So.2d 186 (La.1977); State v. Roddy, 33,112 (La.App.2d Cir.4/7/99), 756 So.2d 1272, writ denied, XXXX-XXXX (La.5/11/01), 791 So.2d 1288.
The admissibility of a confession is a question for the trial judge whose conclusions on the credibility and weight of testimony relating to the voluntariness of *1025 a confession for the purpose of admissibility should not be overturned on appeal unless they are not supported by the evidence. State v. Richardson, 33,272 (La. App.2d Cir.11/1/00), 779 So.2d 771, writ denied, 00-3295 (La.10/26/01), 799 So.2d 1151. We place great weight upon the trial court's factual determinations because of that court's opportunity to observe witnesses and assess credibility. State v. Roddy, supra; State v. Normandin, 32,927 (La.App.2d Cir.12/22/99), 750 So.2d 321, writ denied, 00-0202 (La.9/29/00), 769 So.2d 550.
At the hearing on the motions to suppress in this case, Detective Wray testified as to the circumstances surrounding the defendant's oral recorded statement. Detective Wray explained that he was not present when the defendant was initially advised of his Miranda rights. Detective Wray believed that Detective Jeter had read the defendant his rights prior to the taping of the recorded statement based upon a written waiver of rights form signed by the defendant and initialed by Detective Jeter. In addition, Detective Wray testified that during the taped statement, he showed the defendant the waiver of rights card and that the defendant responded affirmatively when asked if his signature was on the card and if he understood his rights.
Contrary to defendant's assertion in his brief, the state established that the defendant received an adequate Miranda warning through the testimony of Detective Wray, the introduction of the waiver of rights form signed by the defendant and initialed by one of the detectives, and the defendant's affirmative responses in the audiotaped statement indicating his understanding and waiver of his Miranda rights. The record supports a finding that defendant's statement was freely and voluntarily given and was not the product of promises, threats or duress. Thus, we cannot say the trial court erred in denying defendant's motions to suppress his confession. The assignment of error lacks merit.
Patent Sentencing Error
The defendant contends the district court erred in denying his motion to reconsider sentence. Defendant argues that his sentence is excessive considering the circumstances of the case and his background.
An appellate court may notice sentencing errors as error patent. State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790. Multiple convictions obtained the same day for offenses arising out of one criminal episode should be considered as one conviction for purposes of applying the habitual offender law in sentencing. State v. McCurtis, XXXX-XXXX (La.11/2/01), 800 So.2d 862; State ex rel. Porter v. Butler, 573 So.2d 1106 (La.1991); State v. Anderson, 36,969 (La.App.2d Cir.4/9/03), 842 So.2d 1222.
The habitual offender law mandates that a second felony offender be sentenced to not less than one-half the longest term and not more than twice the longest term for a first conviction. LSA-R.S. 15:529.1(A)(1)(a). Any sentence imposed under the habitual offender law shall be served without benefit of probation or suspension of sentence, but parole is not prohibited. LSA-R.S. 15:529.1(G).
A conviction for armed robbery is punishable by imprisonment at hard labor for not less than 10 and for not more than 99 years, without benefit of parole, probation or suspension of sentence. LSA-R.S. 14:64(B). Thus, a second felony offender convicted of armed robbery would face an enhanced sentence of not less than 49½ years (one-half the longest term), and not more than 198 years (twice the longest *1026 term), without benefit of parole, probation or suspension of sentence. Defendant was sentenced to 50 years imprisonment at hard labor without benefit of parole, probation or suspension of sentence for his armed robbery conviction.
A conviction of attempted second degree murder is punishable by imprisonment at hard labor for not less than 10 nor more than 50 years, without benefit of parole, probation or suspension of sentence. LSA-R.S. 14:30.1(B) and 14:27(D)(1). Thus, a second felony offender convicted of attempted second degree murder would face an enhanced sentence of not less than 25 years (one-half the longest term) and not more than 100 years (twice the longest term), without benefit of parole, probation or suspension of sentence. Defendant was sentenced to serve a separate term of 50 years imprisonment at hard labor without benefit of parole, probation or suspension of sentence for his conviction of attempted second degree murder.
In the present case, the defendant's offenses of conviction formed part of a single transaction and therefore support only one multiple offender sentence under LSA-R.S. 15:529.1. At the time of sentencing, the district court noted that defendant had been adjudicated a second felony offender. Based upon this record, the defendant's sentences are indeterminate because the trial court did not designate which sentence was being enhanced under the habitual offender statute. If a court fails to specify which of the two sentences is being enhanced under the statute, the sentences are set aside and the case is remanded for resentencing as the law directs. State v. Mayweather, 28,271 (La. App.2d Cir.6/26/96), 677 So.2d 594.
Because we cannot determine from the sentencing proceedings whether the district court imposed impermissible enhanced sentences for both of defendant's convictions, or which of the sentences was enhanced under the habitual offender statute, we must vacate the sentences imposed for armed robbery and attempted second degree murder and remand this case for resentencing. In reaching this conclusion, we pretermit a discussion of defendant's assignment of error alleging that the sentences imposed were excessive.

CONCLUSION
For the foregoing reasons, the defendant's convictions are affirmed, the sentences imposed for armed robbery and attempted second degree murder are vacated and this case is remanded to the district court for resentencing consistent with this opinion.
CONVICTIONS AFFIRMED; SENTENCES VACATED; REMANDED FOR RESENTENCING.
BROWN, C.J., concurs in convictions; dissents from vacating sentences.
BROWN, J., concurring in part and dissenting in part,
The ADA's remarks in closing argument referred to defendant's statement to the police in which he asserted that the shooting was accidental. The ADA told the jury that the statement was not given under oath like "you saw everyone else take" and that the court will instruct you that you can disregard it, if you believe any witness (defendant) deliberately testified falsely." An unfortunate comparison, but I believe the jury understood that the remarks were not a direct reference to defendant's failure to testify. I agree that defendant's convictions should be affirmed.
Defendant's sentences were within the range provided for by the armed robbery and attempted second degree murder statutes which also require that they be served without parole. The court ordered *1027 the sentences to be served concurrently. I see no error patent. Considering the circumstances of these crimes and defendant's criminal history, these sentences are not constitutionally excessive.
I note that the predicate felony conviction for the habitual offender charge was simple escape (while handcuffed in city court). The armed robbery and attempted murder may have occurred in sequence, but they represent two distinct and independent crimes.
I find it difficult to understand that under the criminal statute the punishment is "without" parole but if sentenced as a second felony offender, it is "with" parole. I disagree that such an incongruity exists in the statute.
Because defendant was sentenced under the criminal statutes, I respectfully dissent to vacating the sentences.