WILLIAMS, J.
 

 _JjThe defendant, Steve Byron Robert, was charged by bill of information with driving while intoxicated (“DWI”), fourth offense, in violation of LSA-R.S. 14:98(E). Following a jury trial, he was convicted as charged. He was sentenced to serve 25 years in prison at hard labor, 60 days of which were ordered to be served without benefit of probation, parole or suspension of sentence. The defendant was also ordered to pay a $5,000 fine plus court costs. For the reasons that follow, we affirm the defendant’s conviction and sentence.
 

 FACTS
 

 On February 15, 2007, at approximately 11:30 p.m., the Shreveport Police Department (“SPD”) responded to a one-vehicle traffic accident on Colquitt Road in Shreveport, Louisiana. Upon their arrival at the scene, officers discovered that the defendant had driven his Toyota Tundra truck into the residence of Archie Pickard. Pickard testified that he walked into the kitchen of his home and “the kitchen exploded.” He stated that he “saw headlights” and realized that a “truck had run into my kitchen ... a cab was actually inside my kitchen.” Pickard also testified that when he opened the passenger door of the truck to check on the driver’s condition, he saw the defendant seated in the driver’s seat “leaned over like he was still driving with a smile on his face[.]” Pick-ard stated that the vehicle was still “in drive” and the defendant was attempting
 
 *1061
 
 to drive forward. He described the defendant as “wasted” and “out of it ... to the point of black out ... he wasn’t aware of what he was doing.” Pickard stated that he did not get close enough to the defendant to detect the odor of alcohol on his person.
 

 |2Pan Krohn, Pickard’s neighbor, also testified. Krohn stated that he was asleep in his house when he heard “a big bang ... like a bomb.” He testified that he looked outside and saw “that truck through the house next door.” Krohn also testified that when he went to check on the driver’s condition, he observed that the defendant was “still in the driver’s seat ... dazed like he just woke up[.]” He stated that he detected the odor of alcohol emitting from the interior of the truck. Krohn testified that he knew the defendant was “drunk” because “I’ve been drunk a lot of times in my life ... I know what being drunk is.” On cross-examination, Krohn testified that he did not smell alcohol on the defendant’s breath or his person; however, he stated that the odor of alcohol “was coming from the truck.”
 

 Lisa Simms and Dale Simms, who lived across the street from Pickard, also testified. Mr. and Mrs. Simms stated that on the night of the accident, they were awakened by a “crash.” When they went outside, they saw the defendant’s truck in Pickard’s kitchen. Mrs. Simms testified that she could tell by the taillights of the truck that the truck was in its reverse gear; however, the defendant “kept gassing it.” She also testified that she and her husband stood watching the defendant and opined that the defendant “was very drunk.” She stated that the defendant “couldn’t hardly walk” when the officers removed him from the truck. She testified that the defendant “was staggering and kind of falling.” Mr. Simms testified that he saw the defendant “slumped over” in the truck and that the defendant “looked dazed.” He stated that the police officers helped the defendant out of the truck and the defendant “couldn’t stand on his own.” Mr. Simms | (¡testified that the defendant “looked drunk” and the police officers “were wobbling all over the yard with him trying to get him in the police car.”
 

 SPD officer, Corporal Heather Florez, investigated the accident. Cpl. Florez testified that when she arrived at the scene of the accident, she noticed that a “red Toyota truck drove through the ditch, hit a mailbox of the [house] next door to Mr. Pickard’s house, and went through the yard, and then ran into his kitchen.” Cpl. Florez also testified that when she approached the vehicle, she noticed that the defendant’s eyes were “glassy and bloodshot” and that she detected “an extremely strong odor of an alcoholic beverage [emitting] from his person.” Cpl. Florez also testified that she had to assist the defendant to her patrol car because “he was very unstable ... walking from side to side, knees buckling a little bit.” She further stated, “I had to physically hold his arms and help him to my car, because he couldn’t walk.” Cpl. Florez testified that the smell of alcohol coming from the defendant’s breath was “very strong” and “every time he would breathe, you could smell it.” She stated that the defendant was “very incoherent” and “appeared very intoxicated.” Cpl. Florez testified that the defendant refused a field sobriety test, so she based her opinion that the defendant was “highly intoxicated” on “his actions, his inability to walk, his eyes [and] the smell of [an] alcoholic beverage on his person.”
 

 The defendant was charged by bill of information with DWI, Fourth Offense. The bill of information referred to the current charge of DWI, and three prior DWI convictions — (1) on November 2, 2006
 
 *1062
 
 in Caddo Parish, in the First Judicial District Court (Docket Number 247435); (2) on February 1424, 2000 in Caddo Parish, in the First Judicial District Court (Docket Number 205553); and (3) on March 14, 1997 in Bossier Parish, in Bossier City Court (Docket Number 00196420).
 

 Following a jury trial, the defendant was convicted as charged. He was sentenced to serve 25 years in prison at hard labor, with 60 days ordered to be served without benefit of probation, parole or suspension of sentence; the defendant was also ordered to pay a fine in the amount of $5,000 plus court costs. The defendant appeals.
 

 DISCUSSION
 

 Sufficiency of the Evidence
 

 The defendant contends the evidence was insufficient to support a conviction for DWI, Fourth Offense. The defendant argues that the state failed to prove one of the three predicate DWI convictions, namely the 1997 conviction in Bossier City Court.
 

 When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under
 
 Hudson v. Louisiana,
 
 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt.
 
 State v. Hearold,
 
 603 So.2d 731 (La.1992);
 
 State v. Bosley,
 
 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347,
 
 writ denied,
 
 97-1203 (La.10/17/97), 701 So.2d 1333.
 

 The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 
 Jackson v. Virginia, supra; State v. Tate,
 
 2001-1658 (La.5/20/03), 851 So.2d 921,
 
 cert. denied,
 
 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004);
 
 State v. Carter,
 
 42,894 (La. App.2d Cir.1/9/08), 974 So.2d 181,
 
 writ denied,
 
 2008-0499 (La.11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in LSA-C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder.
 
 State v. Pigford,
 
 2005-0477 (La.2/22/06), 922 So.2d 517;
 
 State v. Dotie,
 
 43,819 (La.App.2d Cir.1/14/09), 1 So.3d 833. The appellate court does not assess the credibility of witnesses or reweigh evidence.
 
 State v. Smith,
 
 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part.
 
 State v. Eason,
 
 43,788 (La. App.2d Cir.2/25/09), 3 So.3d 685;
 
 State v. Hill,
 
 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758,
 
 writ denied,
 
 2007-1209 (La.12/14/07), 970 So.2d 529.
 

 A presumption of regularity attaches to prior convictions and judicial proceedings. In multiple-offender DWI cases, the state has the burden at trial to prove the existence of the prior convictions and the defendant’s identity as the prior offender.
 
 State v. Carlos,
 
 98-1366 (La.7/7/99), 738 So.2d 556. In addition to proof that a person with the defendant’s name has a prior conviction, the State must offer proof that the defendant is the same person who was previously convicted to establish
 
 prima facie
 
 evidence that the two persons are the same.
 
 State v. Wat
 
 
 *1063
 

 son,
 
 40,059 (La.App.2d Cir.9/21/05), 911 So.2d 396.
 

 In
 
 State v. Watson, supra,
 
 a DWI, fourth offense case, this court stated:
 

 In Louisiana, proof that a person of the same name has been previously convicted does not constitute
 
 prima facie
 
 evidence that the two persons are the same. The state must additionally offer proof that the accused is the same person as the defendant previously convicted. Various methods may be used to prove that the defendant on trial is the same person whose name is shown as the defendant in the evidence of a prior conviction, such as: testimony of witnesses, expert opinion as to the fingerprints of the accused when compared with those of the person previously convicted, photographs contained in a duly authenticated record, or evidence of identical driver’s license number, sex, race, and date of birth.
 

 Id,.,
 
 at 401 (internal citations omitted).
 

 In the instant case, Exhibit S-13 shows that “Steve Byron Robert” received a summons/ticket for DWI on March 14, 1997. Additionally, Exhibit S-12 (minutes of court) shows, in pertinent part: (1) that “Steve B. Robert” pled guilty to DWI, First Offense, in Bossier City Court on April 23, 1997 and was placed on probation for a period of two years; and (2) on March 25, 1999, “In accordance with the recommendation of Ms. Judy Pate, Probation Officer, the probation granted the defendant on [April 28, 1997] of two years be terminated satisfactorily.” This evidence, the admissibility |7of which was not attacked on appeal, plainly shows that someone with the same name as the defendant (1) was charged with DWI, first offense, on March 14, 1997, (2) pled guilty to DWI, first offense, in Bossier City Court on April 23, 1997, (3) was placed on probation for two years, and (4) had his probation terminated satisfactorily in 1999 in accordance with the recommendation of Judy Pate.
 

 The state also offered the testimony of Ms. Pate to prove that the defendant and the person who pled guilty in Bossier Parish were the same person. Ms. Pate testified that in 1997, she worked as a probation officer in Bossier City Court and also was in the probation department in 1999. She also testified that the defendant pled guilty on April 23, 1997, and was placed on probation for a period of two years. Ms. Pate further testified that she was in charge of monitoring the defendant from April of 1997 until he satisfactorily completed his probation on March 25, 1999. During the two-year period, she saw and talked to the defendant a number of times about his probation. Ms. Pate identified the defendant in open court as the same person whose probation she had supervised from 1997-99. We find that Ms. Pate’s testimony, when viewed in conjunction with Exhibits S-12 and S-13, was sufficient to prove the defendant’s identity as the prior offender in the Bossier City Court DWI conviction. This assignment lacks merit.
 

 Motion for Mistrial
 

 The defendant also contends the trial court erred in denying his motion for mistrial. The defendant argues that comments made by the prosecutor during the state’s closing argument violated the constitutional Land statutory prohibition against the state referring, either directly or indirectly, to the defendant’s failure to testify in his own defense.
 

 LSA-C.Cr.P. art. 770(3) provides, in pertinent part:
 

 Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a
 
 *1064
 
 court official, during the trial or in argument, refers directly or indirectly to:
 

 [[Image here]]
 

 (3) The failure of the defendant to testify in his own defense;
 

 ⅜ ⅜ ‡
 

 In the instant case, the defendant presented no evidence at trial. However, during opening and closing remarks, the defense argued that the accident could have been caused by the failure of the truck’s brakes and the defendant’s behavior following the accident could have been caused by injuries he may have sustained in the accident. During the prosecutor’s closing argument, after recounting the testimony of the witnesses, the following statements were made:
 

 [T]he evidence that’s been presented, and no evidence that has been presented contradicting that, no ambulance, no EMT, no post follow-up visit to any kind of hospital or anything like that, nothing whatsoever shows that there was anything wrong with the vehicle prior to the accident. Nothing shows that anything was wrong with the defendant post the collision.
 

 The defendant argues that the reference to the fact that the defense presented no evidence to contradict the state’s evidence “was a clear reference to Mr. Robert’s failure to testify at trial, since he was the only one that could have had such medical evidence.”
 

 We find that there was no direct reference to the defendant’s failure to ^testify in his own defense. Thus, we must determine whether the prosecutor’s statements constituted an “indirect reference” to the defendant’s failure to testify.
 

 In
 
 State v. Mitchell,
 
 2000-1399 (La.2/21/01), 779 So.2d 698, the Louisiana Supreme Court stated:
 

 La. C. Cr. P. art. 770(3) provides that the trial court ‘shall’ declare a mistrial when the prosecutor ‘refers directly or indirectly to ... the failure of the defendant to testify in his own defense[.]’ The purpose behind art. 770(3)’s prohibition against such prosecutorial comment is to protect the defendant’s Fifth Amendment right against self-incrimination by preventing attention being drawn directly or indirectly to the fact that the defendant has not testified on his own behalf.
 

 ‘Direct’ and ‘indirect’ references to the defendant’s failure to take the stand are prohibited by article 770(3). When the prosecutor makes a direct reference to the defendant’s failure to take the stand, a mistrial should be declared, and ‘it is irrelevant whether the prosecutor intended for the jury to draw unfavorable inferences from defendant’s silence.’ When the reference to the defendant’s failure to take the stand is not direct, this Court will inquire into the remark’s ‘intended effect on the jury’ in order to distinguish indirect references to the defendant’s failure to testify (which are impermissible) from statements that are not (which are permissible, though not favored). In order to support the granting of a mistrial, the inference must be plain that the remark was intended to focus the jury’s attention on the defendant’s not testifying.
 

 There are indirect references which focus on, or are intended to focus on a defendant’s failure to testify. One such instance is when the defendant is the only witness who can rebut the state’s evidence. Such a reference to the testimony as uncontroverted focuses the jury’s attention on the defendant’s failure to testify and warrants a mistrial. Then, there are and can be indirect references which are not intended to focus
 
 *1065
 
 on a defendant’s not testifying. One such frequently seen instance is a prosecutor’s emphasizing that the State’s evidence is unrebutted in a situation where there are_]pjwitnesses other than the defendant who could testify on behalf of the defense, but have not. Also ‘[statements in argument to the effect that there is no refuting evidence does not constitute an impermissible reference to the defendant’s failure to testify.’
 

 Id.
 
 at 701-702 (internal citations omitted).
 

 After reviewing the record and the relevant jurisprudence, we find that the statements made during the prosecutor’s closing argument did not constitute an indirect reference intending to focus on the defendant’s failure to testify. We find that the comments merely served to emphasize the fact that the defendant could have introduced other evidence — ambulance records, EMT reports, medical records, or records of problems with the vehicle — to prove that the accident and his behavior were not caused by intoxication on the night of the accident. Contrary to the defendant’s argument, the defendant was not “the only witness who [could have] rebut[ted] the state’s evidence.” Medical testimony or documentary evidence would have sufficed to support the defense theory. Furthermore, there is nothing in the record to indicate that the state’s comments were “intended to focus the jury’s attention on the defendant’s not testifying.” Therefore, we find that the prosecutor’s comments were not intended as an indirect reference to the defendant’s failure to testify in his defense, and the trial court did not err in denying the defendant’s motion for a mistrial.
 

 Furthermore, even if the comments could be construed as an impermissible indirect reference to the defendant’s failure to testify, we find that the trial court’s refusal to grant a mistrial constituted harmless error. In
 
 State v. Small,
 
 37,134 (La.App.2d Cir.6/27/03), 850 So.2d 1019,
 
 writ denied,
 
 2003-2202 (La.1/30/04), 865 So.2d 75, during closing arguments, the prosecutor referred to the defendant’s recorded statement to police officers and stated, “This is not testimony I’m talking about. [The defendant] didn’t take the same oath that you saw everybody else take.” This court concluded that the statement was a direct reference to the defendant’s failure to testify, and the trial court erred in refusing to grant a mistrial. However, this court concluded that the error was harmless, stating:
 

 In
 
 Chapman v. California,
 
 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the United States Supreme Court held that a
 
 Griffin v. California
 
 [380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965)] error (prosecutor’s direct reference to defendant’s failure to testify) is subject to a harmless error analysis on appeal and does not automatically require a reversal. Thus, a violation of Article 770(3) is subject to a harmless error analysis. The proper analysis for determining harmless error is whether the jury’s guilty verdict actually rendered in the particular case was surely unattributable to the error.
 

 Id.
 
 at 1023-24 (internal citations omitted).
 

 In the instant case, the record contains compelling evidence from which the jury could have inferred that the defendant was driving while intoxicated. The jury heard the testimony of the witnesses describing the defendant’s appearance and conduct following the accident. All of the witnesses testified that the defendant did not appear to be injured. The witnesses unequivocally testified that the defendant was intoxicated. Cpl. Florez testified that the defendant’s eyes were “glassy and bloodshot” and that she detected “an extremely strong odor of alcohol” every time
 
 *1066
 
 the defendant breathed. Although the defendant refused a field sobriety test, Cpl. Florez testified that she knew the defendant was intoxicated based on his inability to walk on his own and the strong smell of alcohol on his hübreath. The jury could have reasonably concluded that the defendant’s actions were consistent with intoxication. Therefore, we find that the jury’s guilty verdict was unattributable to the prosecutor’s comments. Accordingly, we conclude that the trial court’s refusal to declare a mistrial does not constitute reversible error. This assignment lacks merit.
 

 CONCLUSION
 

 For the foregoing reasons, we hereby affirm the defendant’s conviction and sentence.
 

 CONVICTION AFFIRMED; SENTENCE AFFIRMED.