DIXON, Justice.
 

 The defendant was sentenced to ninety-nine years at hard labor after a trial by jury for armed robbery. He had been indicted in two different indictments — one for murder and one for armed robbery. Four bills of exceptions are urged on appeal.
 

 The first bill of exceptions was taken to a purported comment by the district attorney on the failure of the defendant to testify in his own defense.
 

 The -offensive argument by the district attorney was made during the summation:
 

 “Why, then, did he shoot Mrs. Stablier? It Really doesn’t mihtter for you to determine the issue of guilt or innocence in. this case for you to answer that ques-, tion. I can surmise many reasons: (1) He did not know that Lyons would be a witness against him by shooting Mrs. Stablier he thought he eliminated the only one that he knew for sure would be a witness against him. He knew that'if Mrs. Stablier were to go free that she could identify him as committing a robbery; or he realized after Donald Lyons' left that this, too, was another failure in a life of failures. And in a moment of anxiety and frustration this boy who had struck out at society before struck out again without thinking. Or, we don’t know what Mrs. Stablier told him. He hasn’t seen fit to tell us. She may have said, you might as well stop doing what you are doing I just told that boy to go get the money — or go get the police. . He may have become angered that he had been foiled, or she may have screamed and tried to grab the gun. We don’t know, but there are many reasons why he did what he did. He has riot seen fit to tell us, . . . ”
 

 The portion of the district attorney’s argument which refers to the failure of the defendant to take the stand is the repeated statement that, “He hasn’t seen fit "to tell' us.”
 

 The trial court-overruled the motion-for a mistrial, but admonished the district at
 
 *275
 
 torney that he was “very close to the edge of making that prejudicial statement,” re-probated by C.Cr.P. art. 770(3).
 

 A remark by the district attorney as to the defendant’s failure to testify must be direct and the inference plain that such remark was intended to bring the jury’s attention to such failure in order to constitute reversible error. State v. Antoine, 189 La. 619, 180 So. 465, and authorities cited therein.
 

 We find that the district attorney did not intend to bring the jury’s attention to the failure of the defendant to testify, although the statement bordered on being prejudicial.
 

 The trial judge found that the physical evidence introduced at the trial was on the rail of the jury box before the jury at the time of the closing argument, and that the prosecutor’s reference was to a lengthy tape recorded confession, in which the accused admitted the crime, but gave no explanation for shooting the victim of the robbery.
 

 There is no merit to Bill of Exceptions No. 1.
 

 Bill of Exceptions No. 2 was taken
 
 to
 
 the admission in evidence of a lengthy tape recorded interrogation which contained inculpatory statements of the accused.
 

 We find no error in the ruling of the trial judge, and no merit to Bill of Exceptions No. 2. The accused was questioned' between 12:50 a. m. and 4:10 a. m. on January 7 by police officers. The accused was adequately informed of his constitutional rights and there is no question but that the first portion of the interrogation was free and voluntary. That portion of the interrogation did not contain the damaging inculpatory admissions of the defendant, and lasted for about forty minutes. After a thirty minute recess the interrogation was resumed, but the accused did not answer questions. He was apparently emotionally upset; the tape reveals that the accused was mostly silent, making occasional sounds interpreted by the interrogating officers as crying.
 

 Again the interrogation was interrupted and the accused was put in a line-up. When questioning was resumed, the response to the officers’ questions was again either silence or the sounds of the defendant’s weeping. Then, in answer to one of the questions by one of the policemen, “how many times did you shoot her, Paul?”, the defendant answered, “three.” Further questioning elicited the confession by the defendant.
 

 It is the position of the defendant that the silence and the crying amounted to the communication of a determination by the accused that he wished to terminate the interrogation, and did not wish to answer any further questions; that the' continued
 
 *277
 
 interrogation by the police officers under these circumstances tainted the confession as having been obtained involuntarily, and with coercion and under duress.
 

 Listening to the tape recording of the interrogation completely dispels any notion that the defendant was in any way coerced, or in any way placed under duress. The questioning of the defendant by the officers was not rude, not rough, not abusive, and not loud. Voices were never raised; the entire interrogation was quiet and deliberate. At no time did the defendant indicate, in any manner determinable from listening to the recording, that he desired to terminate the examination. We cannot hold that, merely because the defendant wept and did not answer for a while, the continued interrogation was coercive, or that the confession was involuntary.
 

 The fourth and fifth bills of exceptions are directed at the sentence. In Bill of Exceptions No. 4 the defendant complains that the penalty provision of R.S. 14:64 (not less than five years nor more than ninety-nine, without benefit of parole, probation or suspension of sentence) deprives the defendant of equal protection of the laws and constitutes cruel and unusual punishment in violation of the state and federal constitutions.
 

 There is no constitutional infirmity in such penalty provision for the crime of armed robbery. Imprisonment itself is clearly not “cruel and unusual punishment,” reprobated by constitutional provision. See State v. Crook, 253 La. 961, 221 So.2d 473; State v. Dell, 258 La. 1024, 249 So.2d 118; State v. White, 254 La. 389, 223 So.2d 843; State v. Bellam, 225 La. 445, 73 So.2d 311. Mere length of sentence is not cruel and unusual punishment; most criminal systems provide for life terms.
 

 The defendant argues in brief that a sentence which deprives a defendant of the possibility of parole denies him equal protection of the laws, because the object of a criminal sentence is reform and rehabilitation of the criminal. Reform and rehabilitation are not the only legitimate objects of a sentence for crime. Deterrence, both to the accused and others, is a legitimate object of a sentence for criminal conduct. It is only in theory that rehabilitation is provided for those convicted of other crimes. All those convicted of armed robbery are treated alike. Defendant has not been denied the equal protection of the laws.
 

 Defendant complains in brief that there was no showing that he was an habitual criminal, and that no presentence investigation was requested by the trial judge.
 

 A trial judge who presides over a trial for the commission of a felony is in a position to acquire a great deal of knowledge
 
 *279
 
 about the ' accused — in some cases, more knowledge than if he were restricted to a pre-sentence investigation report by an overworked probation officer. There is no requirement in law that a pre-sentence investigation be conducted. Such an investigation is more in the nature of an aid to the court, and not a right of the accused. C.Cr.P. art. 875.
 

 It is to be noted in justification of the sentence that the record’before us discloses a senseless and apparently unprovoked killing by gunshot in a business establishment. Although the accused was not tried for murder, the nature of the offense and the complete facts and circumstances surrounding it were before the court.
 

 In view of the state of the law at the time this defendant was tried, an election was made by the prosecutor to try the accused for the crime which bore the more serious penalty. There was doubt about the availability of a death sentence for the crime of murder and a sentence to life imprisonment for murder is presently subject to: commutation, probation and parole. Only- by imposing a sentence under the armed robbery statute could the court have ’some assurance that the accused would be imprisoned for life.
 

 There is no merit to Rills of Exceptions Nos. 4 and 5.
 

 For these reasons, the conviction and sentence are affirmed.
 

 BARHAM, J., dissents being of the opinion that Bills of Exceptions 1 and 2 require reversal.