hDECTJIR, Judge.
The Defendant, Eugene Wright, seeks review of his conviction. The Defendant was convicted of simple robbery, a violation of La.R.S. 14:65, and sentenced to six years at hard labor to be served concurrent to any other sentence' he may have to serve.
FACTS
On December 30, 1999, the Defendant entered a convenience store under the pretext of purchasing a pack of chewing gum. When the clerk opened the cash register during a transaction with another customer, the Defendant reached across the counter, snatched $30.00 from the cash drawer and ran out of the store.
DENIAL OF FIFTH AMENDMENT RIGHT
By these assignments, the Defendant argues that because of the trial court’s opening remarks to the jury, he was denied his Fifth Amendment right against self-incrimination and thus, was entitled to a mistrial. Specifically, the Defendant complains that the trial court im-permissibly placed a burden on the defense to make an opening statement and present evidence to the jury based upon the following excerpt taken from the trial court’s introduction:
The State -will proceed first with the opening statements. They will lay out the case to you as they see or as they appreciate the evidence will show. The defense then will give you their impression of the evidence. They don’t have to but they most often do. Once you hear opening statements, then we will begin with evidence. The State will present their evidence first, then after the State rests, the defense will have an opportunity to present evidence and then the State will have an opportunity to present evidence to rebut any evidence the defense presented. This is because the State carries the burden of proof....
Following the court’s opening remarks, the Defendant objected to the trial court’s statement that the defense most often presents evidence and motioned the court for a mistrial; the motion was denied.
Un his brief to this court, the Defendant complains that in the court’s opening remarks, there is no mention made of a paramount right of the Defendant not to testify against himself. The Defendant maintains that the jury was led to believe that most defendants give an opening statement, and thus, created an impression that there was a problem with the defense of the case because an opening statement was not given. The Defendant concludes that “[t]his impression likely carried over into the presentation of the evidence portion of the case as the court told the jury of the defendant’s opportunity to present evidence but not of his right not to do so.”
The Defendant bases his motion for a mistrial on La.Code Crim.P. art. 770(3) which reads:
*852 Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
[[Image here]]
(3) The failure of the defendant to testify in his own defense;....
The Defendant also contends that a remark prohibited “by Article 770 is per se a substantial violation” of his rights and this court is not free to speculate what the jury might have found had his rights not been violated, citing State v. Green, 315 So.2d 763 (La.1975), and State v. Felix, 556 So.2d 1317 (La.App. 3 Cir.1990).
The supreme court addressed this issue in great detail in State v. Mitchell, 00-1399, p. 4 (La.2/21/01) 779 So.2d 698, 701:
La.C.Cr.P. art. 770(3) provides that the trial court “shall” declare a mistrial when the prosecutor “refers directly or indirectly to ... the failure of the defendant to testify in his own defense... The purpose behind art. 770(3)’s prohibition against such prosecutorial comment is to protect the defendant’s Fifth Amendment right against self-incrimination by preventing attention being drawn directly or indirectly to the fact that the defendant has not testified on his own behalf. State v. Fullilove, 389 So.2d 1282, 1283 (La.1980); Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).
1¡¡“Direct” and “indirect” references to the defendant’s failure to take the stand are prohibited by article 770(3). State v. Johnson, 541 So.2d 818, 822 (La.1989). “When the prosecutor makes a direct reference to the defendant’s failure to take the stand, a mistrial should be declared, and ‘it is irrelevant whether the prosecutor intended for the jury to draw unfavorable inferences from defendant’s silence.’ ” Id. (citing Fullilove, 389 So.2d at 1284). When the reference to the defendant’s failure to take the stand is not direct, this Court will inquire into the remark’s “intended effect on the jury” in order to distinguish indirect references to the defendant’s failure to testify (which are impermissible) from statements that are not (which are permissible, though not favored). Johnson, 541 So.2d at 822; Fullilove, 389 So.2d at 1284; State v. Jackson, 454 So.2d 116, 118 (La.1984). In order to support the granting of a mistrial, the inference must be plain that the remark was intended to focus the jury’s attention on the defendant’s not testifying. State v. Smith, 327 So.2d 355, 362 (La.1975) (on rehearing); State v. Reed, 284 So.2d 574, 576 (La.1973); State v. Howard, 262 La. 270, 263 So.2d 32 (1972).
The Defendant distinguishes the facts of the instant case from those in State v. Bailey, 95-78 (La.App. 3 Cir. 11/2/95), 664 So.2d 665, writ denied, 96-0609 (La.6/21/96), 675 So.2d 1077. In Bailey, this court held that the trial judge’s statement to the jury that they would now proceed with the defendant’s case was not found to be grounds for a mistrial. The Defendant contends that in the ease sub judice, the trial judge went a step further than the judge in Bailey by telling the jury that most defendants proceeded in a certain way.
In Bailey, the defendant argued:
[T]hat the trial court committed reversible error in commenting upon the failure of the defendant to produce evidence despite the State’s burden of proof, where the State had called the witnesses announced by defendant for sequestration, the defendant was not called to testify and the defense was forced to announce in response that it rested.
*853 Id. at 679, p. 24. Also, the defendant maintained “that the trial court committed reversible error in denying the motion for mistrial.” Id. at 679, p. 24. The facts in Bailey were summarized as follows:
After the close of the State’s case, the trial court stated: “We shall now proceed with the defendant’s case.” The defense counsel |4approached the bench and stated his objection to the above comment because the defense was not planning on presenting any additional evidence. The trial court indicated that he planned to explain that to the jury and did not feel the comment was prejudicial to the defendant. The defendant then asked for a brief recess in order to avoid having to immediately stand and announce that was not going to present a case, which the trial court granted. The defendant then moved for a mistrial, stating the comment referred to defendant’s right to silence. The trial court denied defendant’s motion. After a brief recess, the defendant announced that it had no further evidence to introduce and the trial judge made the following comment to the jury:
Ladies and gentlemen, the meaning of that statement is that no further evidence will be presented to you in connection with this case. You must make your decision on the basis of the evidence that you have heard to this point. It is the State’s burden of proof to convince you beyond a reasonable doubt that a crime was committed. The evidence that you have heard has come from witnesses that have been before you and been questioned and cross-examined by the defense, and the defense has presented evidence through that cross-examination process to you. So you will have to consider only the evidence that you have heard in connection with the case at this time.
The trial court reiterated in his final instructions to the jury that “[t]he defendant is not required to prove that he is innocent. The burden is upon the State to prove the defendant’s guilt beyond a reasonable doubt.”
Id. at 679, p. 28-24.
Considering Article 770, this court concluded that the trial judge’s comment was neither a direct nor indirect reference to the failure of the defendant to testify and that his comment in no way reflected an intent to emphasize defendant’s failure to testify. Id. Also, the court did not consider the trial court’s comment to have resulted in any prejudice to the defendant, and thus, did not warrant a mistrial. Id.
In the case at hand, the trial court’s statement concerned the Defendant’s decision whether or not to deliver an opening statement. The court did not refer to the Defendant’s decision whether or not to put on evidence, i.e., testify or remain silent, after the State had rested its case as did the trial court in Bailey. In the instant | Rcase, the trial court explained to the jury that the opening statements were the impressions of the evidence as appreciated by the respective parties. Additionally, the jury was instructed that the opening statements of counsel did not constitute evidence and that the jurors were bound to decide the case from the evidence. Accordingly, we find that the trial court’s opening remark was neither a direct nor indirect reference to the Defendant’s decision to remain silent and that his comment in no way reflected an intent to emphasize same. Additionally, the trial court did not err in denying the Defendant’s motion for a mistrial, and thus, these assignments are without merit.
FAILURE TO SUPPRESS IDENTIFICATION
By this assignment, the Defendant argues that the trial court erred in deny *854 ing his Motion in Limine seeking to suppress the “show-up” identification of the Defendant. The Defendant contends that the identification process was unfairly suggestive.
As noted by this court in State v. Jones, 96-1581, p. 16-17 (La.App. 3 Cir. 6/4/97) 696 So.2d 240, 248-249:
“A defendant attempting to suppress an identification must prove both that the identification itself was suggestive and that there was a likelihood of mis-identification as a result of the identification procedure.” State v. Prudholm, 446 So.2d 729, 738 (La.1984).
In Mamon v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the Supreme Court considered five factors in determining whether an identification was suggestive: (1) the witness’s opportunity to view the defendant at the time the crime was committed; (2) the degree of attention paid by the witness during the commission of the crime; (3) the accuracy of any prior description; (4) the level of the witness’s certainty displayed at the time of the identification; and (5) the length of time elapsed between the crime and the identification.
Un the Defendant’s Motion in Limine, he objected to the identification of himself in court by witnesses Lisa Magee, Peter Ross and Kandi Roshong. The Defendant set forth the following grounds for his objection:
(1) the witnesses do not know the defendant, (2) the conditions under which they allegedly observed the defendant were both brief and poor, (3) there has been no line-up, or if so, it was done without the knowledge of counsel, and the defendant was unrepresented, (4) there will be no other possible subject to identify in the courtroom other than the defendant, and the circumstances would suggest an identity to the witness, and (5) it would be prejudicial to the defendant to allow witness to do so.
The Defendant also complained that he was taken.to the scene of the alleged crime near the time of the offense by police and was presented to the witnesses for identification. He contended that there was a substantial likelihood of irreparable mis-identification because no other alternative suspects were presented to witnesses and because he was clearly under arrest.
On appeal, the Defendant complains that the suggestiveness of his identification was articulated in the trial testimony of eyewitness Peter Moss wherein he stated, “I gave them the description of the guy and they said they had got him and they were bringing him up here so I could identify him.” The Defendant also complains that the two identifications were made while he was sitting in the back of the patrol car in handcuffs, and thus, the witnesses were not given the opportunity to see him standing to determine if his build or height matched that of the robber. He notes that the Defendant’s Miami Dolphins jacket was laying across his lap and he was not wearing the beany cap. Lastly, the Defendant argues that the witnesses were not asked to identify the suspect in a live or photo line-up subsequent to the initial “show-up.”
[7The record reflects that three witnesses testified at the hearing on the Motion in Limine held October 10, 2000 concerning the identification of the Defendant. First, Deputy Danny Hunt testified that he received the initial call concerning a robbery at the Joc-Stop Store at 10:36 p.m. He was advised that a black male approximately five feet eight inches tall wearing a black beany cap, khaki pants and a Miami Dolphins shirt/jacket with an orange stripe had left the store north bound on Jeane Chapel Road. At 10:58 *855 p.m., Deputy Hunt came upon a Provost Marshal’s Office unit that had stopped a suspect walking on the roadway that matched the description. Deputy Hunt testified that after he advised the Defendant of his Miranda rights and performed a quick pat-down for officer safety, he placed the Defendant in the back seat of his unit and advised the Defendant that he was taking him to the Joc-Stop Store. The Defendant was not placed under arrest at this time but was handcuffed in the front for safety.
Next, Deputy Hunt explained that he parked his unit in the front parking area of the store, entered the store and advised the cashier, Lisa McGee, that he had a subject in his unit that he would like for her to see if she could identify him as the person that robbed her. Ms. McGee testified that she got a real good look at the suspect’s face during the robbery and positively identified the Defendant sitting in the police car as the person that had robbed her. She added that she could not tell whether or not the Defendant was handcuffed because his jacket was on his lap. She also noted that he was not wearing his cap. Ms. McGee estimated that about twenty to thirty minutes elapsed between the time of the incident and the time of the identification. Lastly, Ms. McGee testified that she had no doubt that the Defendant was the person who committed the offense.
IsPeter Moss, also an eyewitness to the crime, testified that as he was pulling into the parking lot of Joc-Stop, he saw a black male reach into the cash drawer of the register and run out of the store. The suspect passed in front of his vehicle, enabling Mr. Moss to see his face. Mr. Moss testified that the suspect was wearing a black beany and a greenish blue Miami Dolphins “parker.” Mr. Moss explained that he chased the suspect until he fell in a ditch and then watched him run into an apartment area. Approximately fifteen to twenty minutes passed from the time he lost sight of the suspect and the time he was asked to identify a possible suspect in the police car. Mr. Moss testified that Deputy Allen asked him if the Defendant was the man that robbed the store and he confirmed same. Mr. Moss also stated that he could clearly see the Defendant’s face in the police vehicle. He noted that the Defendant had his Miami Dolphins “parker” laying in his lap, blocking the view of the handcuffs, and he was not wearing his cap. Lastly, Mr. Moss testified that he had no doubt in his mind that the Defendant was the man he saw exiting the store.
Neither of the eyewitnesses were asked to identify the offender from a lineup nor were they shown alternative suspects. Both witnesses testified that the fact that the police had the Defendant in the back seat of the police car did not suggest that he was the perpetrator. Lastly, both witnesses testified that the parking lot was well lit.
Applying the Manson factors to the present case, we find that the identification procedure did not produce the likelihood of misidentification. Both eyewitnesses had the opportunity to view the Defendant at the time of the offense and each witness gave an accurate description of the Defendant and the clothing that he was still wearing when he was apprehended. Although the Defendant remained seated in the police unit at the time of his identification and was no longer wearing his jacket or cap, both witnesses were certain that the Defendant was the perpetrator. Also, the | aDefendant was identified within thirty minutes of the offense. Lastly, both eyewitnesses testified that they were unaware that the Defendant was handcuffed, thus negating the suggestibility of same. *856 We find that although the witnesses were not asked to identify the Defendant in a live or photo line-up subsequent to the initial “show-up” identification, the facts support the conclusion that the identification was not suggestive. Thus, the trial court did not err in denying the Defendant’s Motion in Limine; this assignment is without merit.
For the foregoing reasons, the Defendant’s conviction and sentence are affirmed.
AFFIRMED.