908 So.2d 1237 (2005)
STATE of Louisiana, Appellee
v.
Jonathan DAGENHART, Appellant.
No. 39,874-KA.
Court of Appeal of Louisiana, Second Circuit.
August 17, 2005.
*1238 Peter Flowers, Shreveport, Christopher A. Aberle, Mandeville, Louisiana Appellate Project, for Appellant.
Paul J. Carmouche, District Attorney, Ed Blewer, Assistant District Attorney, for Appellee.
Before BROWN, CARAWAY, and MOORE, JJ.
BROWN, C.J.
Defendant, Jonathan Dagenhart, pled guilty to four of ten counts of molestation of a juvenile, with the other six counts being dismissed. After a lengthy hearing, defendant was sentenced to ten years at hard labor and a $5,000 fine on counts one, two, and four. He was sentenced to 15 years at hard labor and a fine of $10,000 on count three. The sentences on counts two, three and four were ordered to run concurrently; however, the sentence on count one was ordered to run consecutively with the other three counts. The court ordered the sentences to be served without diminution for good behavior. Defendant *1239 filed a motion for reconsideration of sentence, which was denied. Defendant now appeals. We affirm.

Facts and Procedural History
Defendant, Jonathan Dagenhart, is an admitted pedophile. His victims are female children ranging in age from two to ten years old. Defendant used his status as a teacher, his certification by the state as a foster parent,[1] and claims that he was working for a nanny service and qualifying to be a Court Appointed Special Advocate, to gain the confidence of the parents of young children. Defendant admitted at sentencing that he focused his attention on young girls in his neighborhood from underprivileged families.
The victims would spend the night at defendant's apartment. Defendant often insisted that they sleep with him in his bed. Any boys in the group would have to sleep in another room. Before going to bed, defendant insisted that they take some type of "vitamin" that made them sleepy. They would later wake up with their panties either completely off or pulled down. Several complained that their privates felt oily or greasy when they awoke. A couple of the children woke up while defendant was molesting them.
Defendant admitted that at first he only looked at the young girls' genitals while they slept, then his obsession progressed to touching the children's genital areas while they were asleep. The obsession further progressed and one child was fondled in public while on a swim outing at Water Town (count two), and at least as to one victim, defendant admitted to engaging in genital-to-genital contact while the child slept. The child woke up and found the nude defendant on top of her with his penis touching her privates.
At the time of his arrest in 2002, defendant was 32 years old. After arrest, defendant was able to bond out of jail. He went to Oak Ridge, Tennessee, where he stayed with his parents for approximately 11 months. During that time, defendant voluntarily registered as a sex offender, joined a church-affiliated sexual addiction counseling service, joined a co-counseling group, and was subjected to a battery of tests by Drs. Jerry Perlman and Peter Young, two psychologists associated with the Tennessee Sex Offender Treatment Board.
A sentencing hearing was conducted over a three-day period in May 2004. The mother of M.G.L. (count one) gave a statement about the impact that defendant's acts had on the child and her family. Dr. Paul Ware, a Shreveport psychiatrist, and Dr. Lisa Harper, a Shreveport psychologist, testified for defendant. Dr. Harper testified that she reviewed the reports of Drs. Perlman and Young, and conducted her own tests. Dr. Ware and Dr. Harper both opined that defendant's scores on the tests showed a low likelihood of recidivism, and that defendant was a good candidate for rehabilitation in a structured program. Drs. Harper and Ware both agreed that pedophiles generally under-reported their acts.
Dr. George Seiden, a Shreveport psychiatrist, testified for the state. He examined the reports of Drs. Harper, Ware, Perlman and Young. Dr. Seiden also conducted interviews with defendant. Dr. Seiden disagreed with the assertions that defendant was a good candidate for rehabilitation or that he was unlikely to repeat his offenses. *1240 Dr. Seiden noted that defendant committed these acts after having seen counselors. Dr. Seiden testified that pedophiles under-reported their acts at a ratio of 30 unreported offenses to every one known offense. Dr. Seiden also opined that for the next 20 years a pedophile of the defendant's age has a recidivism rate of 75 percent.
Defendant testified and admitted to the originally charged ten acts of molestation. He stated that he had molested 13 to 15 children between the ages of three and twelve years. He detailed his efforts to seek treatment after his arrest. Several members of defendant's family testified about his attempts to seek treatment, and their interest in helping to monitor defendant.
The trial court allowed defendant and the state time to brief the issue of sentencing. Defendant was sentenced on June 18, 2004. The trial court conducted an extensive review of defendant's background, the facts of the offenses, and expert testimony regarding the likelihood of recidivism. The trial court found defendant to be "a devious, deceptive, manipulative, and dangerous person who needs to be incarcerated to protect the public." The trial court noted that defendant ingratiated himself with the children's families in order to come into contact with the children.
The trial court reviewed the facts of each of the four offenses and found that count one, which involved the molestation of a two-year-old while babysitting her at her home, to be a different course of conduct or scheme than the other three offenses, which occurred in defendant's apartment. The trial court then ordered the sentence for count one to run consecutively with the sentences imposed for counts two, three, and four, for a total term of imprisonment of 25 years.

Discussion
Defendant claims that the trial court imposed an excessive sentence when it ordered the sentence on count one to run consecutively with the sentences imposed on counts two, three, and four. Defendant argues that concurrent sentences for all four counts were appropriate since the molestations all occurred as part of a common scheme or plan.
La. C. Cr. P. art. 883 states that when two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. (Emphasis added). It is within a trial court's discretion to order sentences to run consecutively rather than concurrently. State v. Robinson, 33,921 (La.App. 2d Cir.11/01/00), 770 So.2d 868; State v. Coleman, 32,906 (La.App. 2d Cir.04/05/00), 756 So.2d 1218, 1247-48; State v. Derry, 516 So.2d 1284 (La.App. 2d Cir.1987), writ denied, 521 So.2d 1168 (La.1988). Concurrent sentences arising out of a single cause of conduct are not mandatory, State v. Pickett, 628 So.2d 1333 (La.App. 2d Cir.1993); State v. Nelson, 467 So.2d 1159 (La.App. 2d Cir.1985), and consecutive sentences under those circumstances are not necessarily excessive. State v. Williams, 445 So.2d 1171 (La.1984); State v. Ortego, 382 So.2d 921 (La.1980), cert. denied, 449 U.S. 848, 101 S.Ct. 135, 66 L.Ed.2d 58 (1980); State v. Mills, 505 So.2d 933 (La.App. 2d Cir.1987), writ denied, 508 So.2d 65 (La.1987).
These acts occurred over a five-year period and involved different children and a tailored methodology. Defendant is a serial sexual predator. If defendant's argument is carried to its logical conclusion, then no matter how long a period of time the offenses spanned or how many *1241 children were involved, such pedophiles would always receive concurrent sentences. The same would be true of a serial murderer or rapist. La. C. Cr. P. art. 883 is inapplicable to such situations. Even if considered, article 883 allows a trial court the discretion to impose consecutive penalties in cases in which the offender's past criminality or other circumstances in his background justify treating him as a grave risk to the safety of the community. State v. Walker, 00-3200 (La.10/12/01), 799 So.2d 461; State v. Feaster, 36,868 (La.App. 2d Cir.03/05/03), 840 So.2d 675. Among the factors to be considered are the defendant's criminal history, State v. Ortego, supra; State v. Jacobs, 493 So.2d 766 (La.App. 2d Cir.1986); the gravity or dangerousness of the offense, State v. Adams, 493 So.2d 835 (La.App. 2d Cir.1986), writ denied, 496 So.2d 355 (La.1986); the viciousness of the crimes, State v. Clark, 499 So.2d 332 (La.App. 4th Cir.1986); the harm done to the victims, State v. Lewis, 430 So.2d 1286 (La.App. 1st Cir.1983), writ denied, 435 So.2d 433 (La.1983); whether the defendant constitutes an unusual risk of danger to the public, State v. Jett, 419 So.2d 844 (La.1982); and the potential for defendant's rehabilitation, State v. Sherer, 437 So.2d 276 (La.1983).
In the present case, the trial court fully complied with La. C. Cr. P. art. 894.1 in conducting an extensive review of the facts of the case and defendant's background, and in addressing all of the mitigating and aggravating factors listed in article 894.1. The trial court specifically found the offenses to be serious ones, intentionally planned and calculated with total disregard for the harm caused to the young victims. The trial court determined that defendant posed an unacceptable risk of harm to others. The trial court relied on Dr. Seiden's finding of a high risk of recidivism together with defendant's past history. Under these circumstances, concurrent sentences were not appropriate.
Defendant received a great benefit, both as to which charges were filed and the dismissal of other charges. The dismissal of six counts reduced defendant's sentencing exposure by 60%. Further, the facts underlying one count would have supported an attempted aggravated rape charge. In count three, defendant pulled the sleeping child's panties off, lubricated the child with baby oil, and climbed on top of her in order to rub his penis against her genitals. The child woke up, found defendant on top of her, and saw him rubbing his penis against her privates. She made defendant get off of her.
Additionally, the secret drugging of these children supports other charges such as aggravated battery. Evidence was found that the "vitamins" defendant gave the children contained benzodiazepine, an active ingredient in pain medication such as Valium. A substantial advantage obtained by means of a plea bargain is a legitimate consideration in sentencing. State v. Smack, 425 So.2d 737 (La.1983); State v. Bradford, 29,519 (La.App. 2d Cir.04/02/97), 691 So.2d 864.
The circumstances of this case are such that the trial court did not abuse its great discretion in imposing a consecutive sentence. In fact, the trial court could have imposed consecutive sentences on all counts.
Defendant argues that the court did not expressly tell him during the guilty plea hearing that the sentences may run consecutively. The record shows that at sentencing, the trial court advised defendant of the maximum sentence for each count. When a defendant is provided with the correct maximum sentence exposure for each count, he can easily calculate the possible maximum aggregate exposure he *1242 faces. State v. Girtley, 03-0654 (La.App. 3d Cir.10/08/03), 856 So.2d 230, writ denied, 03-3111 (La.03/12/04), 869 So.2d 818. This assignment is without merit.
Defendant also argues that his post-guilty plea efforts support a reduced sentence with a structured treatment regime pursuant to La. R.S. 15:538(C). Deterrence is a legitimate sentencing object, State v. Howard, 262 La. 270, 263 So.2d 32 (1972), even though a defendant has demonstrated efforts to reform. State v. Tully, 430 So.2d 124 (La.App. 2d Cir.1983), writ denied, 435 So.2d 438 (La.1983).
A sex offender is not entitled to an early release for treatment. Instead, the provisions of La. R.S. 15:537, which address the denial of good time, and La. R.S. 15:538, which provides for ineligibility for probation, parole, or suspension of sentence unless certain conditions, such as sterilization, are imposed, are self-executing and are to be implemented by the Louisiana Department of Public Safety and Corrections. State v. Ellis, 38,740 (La.App. 2d Cir.8/18/04), 880 So.2d 214.
The sentences in this case are not illegal or disproportionately severe and do not offend a sense of justice. They are not unconstitutionally excessive.

Conclusion
For the reasons set forth above, the judgment of the trial court is affirmed.
NOTES
[1] At the sentencing hearing, defendant asserted that he was only certified as a foster parent for boys. The trial court noted that defendant was also certified for keeping girls, once he got a bigger apartment. The trial court observed that defendant's goal was to be a foster parent for girls.