NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 KA 0322

STATE OF LOUISIANA

VERSUS

JEREMY JAMES GRINER

Judgment Rendered: SEP 2 7 2019

* * * * * *

On Appeal from the Twenty-First Judicial District Court
In and for the Parish of Livingston
State of Louisiana
Docket No. 35185

Honorable Elizabeth P. Wolfe, Judge Presiding

* * * * * *

Scott Perrilloux
District Attorney
Patricia P. Amos
Assistant District Attorney
Livingston, Louisiana

Counsel for Appellee
State of Louisiana

Jeremy J. Griner
Jackson, Louisiana

Defendant/Appellant
In Proper Person

Gwendolyn K. Brown
Louisiana Appellate Project
Baton Rouge, Louisiana

Counsel for Defendant/Appellant
Jeremy James Griner

* * * * * *

BEFORE: McCLENDON, WELCH, AND HOLDRIDGE, JJ.

**McCLENDON, J.**

Defendant, Jeremy J. Griner, was charged by bill of information with attempted second degree murder, a violation of LSA-R.S. 14:27 and LSA-R.S. 14:30.1. He entered a plea of not guilty. After a trial by jury, defendant was found guilty as charged. The trial court denied a motion for post-verdict judgment of acquittal and a motion for new trial filed by defendant. The trial court originally sentenced defendant to twenty years imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence. After a hearing on a habitual offender bill of information filed by the State, the trial court adjudicated defendant a second felony habitual offender, vacated the original sentence, and resentenced defendant to twenty-five years imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence.

Defendant now appeals, raising the following issues in five assignments of error in a counseled brief: (1) erroneous jury instructions, (2) erroneous imposition of the original sentence immediately after the denial of post-trial motions, (3) excessive sentence, (4) failure to comply with sentencing guidelines, and (5) ineffective assistance of counsel. Defendant filed a *pro se* brief supplementing the argument raised in counseled assignment of error number one. He also alleges that the trial court erred in failing to order a presentence investigation report. For the following reasons, we affirm the conviction, habitual offender adjudication, and sentence.

## STATEMENT OF FACTS

On January 22, 2017, firefighters, paramedics, and officers of the Livingston Parish Sheriff's Office (LPSO) responded to a Kangaroo Gas Station in Albany, located just north of Highway 43, regarding a report of a physical altercation between two male subjects. When LPSO Deputy Ronald Roberts arrived on the scene, first responders were attending to one of the male subjects, Bradley Burton, who was on the ground laying in a large pool of blood with multiple stab wounds across his upper, middle, and lower back, the right side of his scalp, and the upper portion of his right arm. The other subject, defendant, was sitting on the curb, fifteen feet from Highway 43, with his shirt wrapped around his hand, which was covered in blood.

2

Deputy Roberts advised defendant of his **Miranda**[1] rights, handcuffed him, and asked him to explain what happened. Defendant stated that he went to the gas station with Jennifer Newman, Burton's ex-wife with whom Burton shared custody of two children. Newman and Burton agreed to meet at the gas station to exchange physical custody of the children. Defendant further stated that after they arrived, he escorted the children[2] from Burton's vehicle to Newman's vehicle. He then walked back toward Burton. At that point, he and Burton engaged in a verbal altercation that became physical when Burton struck defendant. Defendant stated that he responded with several punches as a physical fight ensued. Defendant then extracted a brass knuckles knife and began stabbing Burton.[3] Defendant further informed Deputy Roberts that the brass knuckles knife was, at that time, located under the front seat of Newman's vehicle. According to Deputy Roberts, defendant did not have any visible signs of having been struck in the face.

After securing defendant in a patrol unit, the officers took photographs of Burton lying in the pool of blood, recovered and photographed defendant's weapon, secured and photographed the rest of the scene, and viewed surveillance footage. Burton was transported by ambulance to the hospital, where additional photographs of his multiple stab wounds were taken.

Burton testified at trial. He denied threatening defendant in any way when Newman and defendant arrived at the scene to pick up the children.[4] After telling his daughters goodbye and going back to his vehicle, out of the corner of his eye, Burton noticed "a flash of something" and saw defendant running toward him. Burton

---

[1] **Miranda v. Arizona**, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

[2] While Deputy Roberts used the singular term "child" in relaying defendant's account of the incident, according to Burton's trial testimony, Burton and Newman had two children and both were at the scene on the day in question.

[3] While defendant contended, based on purported warnings from Newman, that he believed Burton would be armed that day, no weapons were located near Burton, and there was no indication or claim that Burton actually had a weapon.

[4] Burton testified that Newman and defendant contacted him earlier that day, while he and the children were at church, in an attempt to pick up the children earlier than the agreed upon time. Newman and defendant went to the church. Burton testified that he was nervous and feared that defendant was going to attack him when defendant abruptly exited his vehicle at the church. Burton took a swing at defendant, but did not make contact, as defendant "rolled on the ground." Defendant then stood up and took several swings at Burton, but also failed to make contact. Defendant "reached down to his pocket" and smiled at Burton, just before they all left the church property. Later, they met at the gas station where the stabbing took place.

3

attempted to flee, as defendant began swinging at him, armed with what Burton then observed as a shiny object. Burton, who was unarmed, attempted to enter or partially entered the store before defendant began stabbing him multiple times with what Burton ultimately realized was a knife.

Anthony Lebouef, who was at the gas station using a Red Box machine at the time of the incident, and Jennifer Barnett, who worked at the gas station, witnessed the incident. Lebouef and Barnett testified at trial and identified defendant as the attacker and Burton as the victim of the stabbing. When Lebouef first noticed defendant running after Burton and saw them fighting, he placed his daughter, who was with him at the time, in his vehicle, fearing that she might get hurt. Lebouef, who had a permit to carry a concealed weapon and was armed, saw defendant swinging a knife and heard Burton say, "he's killing me." According to Barnett, as the fight ensued, Burton ran towards the store as defendant was repeatedly stabbing him. Lebouef told defendant to back away from Burton; however, defendant continued to stab Burton. Lebouef pulled out his gun, pointed it at defendant, and again commanded him to back away. Lebouef and Barnett indicated that after Lebouef brandished his weapon, defendant took at least one more swing at or stabbed Burton again, before standing up and backing away.

## COUNSELED ASSIGNMENT OF ERROR NUMBER ONE, COUNSELED ASSIGNMENT OF ERROR NUMBER FIVE (IN PART), & PRO SE ASSIGNMENT OF ERROR NUMBER ONE

In counseled and pro se assignments of error number one, defendant argues that the trial court erred by instructing the jury that it could find him guilty of attempted second degree murder upon finding that he had the specific intent to kill or to inflict great bodily harm upon the victim. He argues that the instruction consists of an incorrect statement of law, and that under the facts of this case, where his intent was at issue, deprived him of a fair trial and violated his due process rights. In counseled assignment of error number five, in part, defendant argues that his trial counsel's failure to object to the jury instruction at issue constitutes ineffective assistance of counsel. He argues that there is no strategical reason to justify counsel's omission.

4

Defendant contends that the prejudicial impact of the omission is clear, since at trial, he argued the offense constituted aggravated battery instead of attempted second degree murder and/or that he acted in self-defense. Contending that the reasonableness of his decision to arm himself was at issue, defendant notes there was testimony regarding a physical fight at the church earlier in the day and claims the victim threw the first punch at the time of the stabbing. Claiming that he argued at trial that the evidence only supported the intent to inflict great bodily harm, defendant concludes the instruction that such a finding would support a conviction of attempted second degree murder was fatally prejudicial.

The offense of second degree murder is defined in LSA-R.S. 14:30.1A(1), in pertinent part, as "the killing of a human being ... [w]hen the offender has a specific intent to kill or to inflict great bodily harm[.]" Under LSA-R.S. 14:27A, a person is guilty of an attempt to commit an offense when he has a specific intent to commit a crime and "does or omits an act for the purpose of and tending directly toward the accomplishing of his object." Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10(1). Such state of mind can be formed in an instant. Specific intent does not have to be proven as fact, but may be inferred from the circumstances of the transaction and the actions of the defendant. **State v. Cousin**, 17-1135 (La.App. 1 Cir. 12/21/17), 240 So.3d 954, 957, writ denied, 18-0184 (La. 11/5/18), 255 So.3d 1049.

The gravamen of attempted second degree murder is the specific intent to kill and the commission of an overt act tending toward the accomplishment of that goal. **State v. Brunet**, 95-0340 (La.App. 1 Cir. 4/30/96), 674 So.3d 344, 347, writ denied, 96-1406 (La. 11/1/96), 681 So.2d 1258. Although the statute for the completed crime of second degree murder allows for a conviction based on "specific intent to kill *or* to inflict great bodily harm," LSA-R.S. 14:30.1A(1) (emphasis added), specific intent to kill is an essential element of the crime of attempted second degree murder. **State v. Butler**, 322 So.2d 189, 192 (La. 1975); **State v. Martin**, 11-1843 (La.App. 1 Cir. 5/2/12), 92 So.3d 1027, 1031, writ denied, 12-1244 (La. 11/9/12), 100 So.3d 836. An

5

intent to kill might be reasonably inferred from the intentional use of a deadly weapon, such as a knife, to produce injuries involving serious risk of death. **Butler**, 322 So.2d at 194; **State v. Jones**, 18-0479 (La.App. 1 Cir. 11/2/18), 2018 WL 5779773, at *4 (unpublished). Additionally, specific intent to kill may be inferred when the defendant stabs a victim, especially when those wounds are to the heart or chest. **Id.**; see **State v. Scoby**, 536 So.2d 615, 621 (La.App. 1 Cir. 1988), writ denied, 540 So.2d 339 (La. 1989) (conviction of attempted second degree murder upheld where the defendant stabbed the victim with a butcher knife while the victim was lying on the ground, pursued the victim as he attempted to flee, and the victim suffered injuries requiring medical attention and a stay in the hospital).

In the instant case, during jury instructions, the trial court read the definitions of specific and general criminal intent, second degree murder, and attempt before restating the elements of attempted second degree murder based on those definitions. Accordingly, the trial court incorrectly included the intent "to inflict great bodily harm" as an element of attempted second degree murder. As noted by defendant on appeal, his trial counsel failed to object to the trial court's erroneous instruction. Therefore, defendant is precluded from raising this issue on appeal. See LSA-C.Cr.P. art. 801C; see also LSA-C.Cr.P. art. 841A. Nonetheless, we elect to consider defendant's argument in order to address his claim of ineffective assistance of counsel. See **State v. Patton**, 10-1841 (La.App. 1 Cir. 6/10/11), 68 So.3d 1209, 1217.

As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief in the district court rather than on appeal. This is because post-conviction relief provides the opportunity for a full evidentiary hearing under Louisiana Code of Criminal Procedure article 930. However, when the record is sufficient, this court may resolve this issue on direct appeal. **Patton**, 68 So.3d at 1217.

A claim of ineffectiveness of counsel is analyzed under the two-pronged test developed by the United States Supreme Court in **Strickland v. Washington**, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to establish that his trial attorney was ineffective, the defendant must first show that the attorney's performance

6

was deficient, which requires a showing that counsel made errors so serious that he was not functioning as counsel guaranteed by the Sixth Amendment. Secondly, the defendant must prove that the deficient performance prejudiced the defense. This element requires a showing that the errors were so serious that the defendant was deprived of a fair trial; the defendant must prove actual prejudice before relief will be granted. It is not sufficient for the defendant to show that the error had some conceivable effect on the outcome of the proceeding. Rather, he must show that but for the counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. Further, it is unnecessary to address the issues of both counsel's performance and prejudice to the defendant if the defendant makes an inadequate showing on one of the components. **State v. Miller**, 15-1031 (La.App. 1 Cir. 12/23/15), 185 So.3d 811, 815-16, writ denied, 16-0152 (La. 1/23/17), 215 So.3d 681.

A conviction will not be overturned on the grounds of an erroneous jury charge unless the disputed portion, when considered in connection with the remainder of the charge, is erroneous and prejudicial. **State v. Motton**, 395 So.2d 1337, 1348 (La.), cert. denied, 454 U.S. 850, 102 S.Ct. 289, 70 L.Ed.2d 139 (1981); **State v. Revish**, 15-0470 (La.App. 1 Cir. 11/9/15), 185 So.3d 8, 15, writ denied, 15-2247 (La. 5/20/16), 191 So.3d 1066. An erroneous instruction is subject to harmless error review or in the case of an ineffective assistance of counsel claim, an analysis of whether the defendant was prejudiced by the error. See **State v. Hongo**, 96-2060 (La. 12/2/97), 706 So.2d 419, 421-22.[5] The question becomes, whether it appears beyond a reasonable doubt that the erroneous instruction did not contribute to the jury's finding of guilt, or whether the error is unimportant in relation to everything else the jury considered, as revealed in

---

[5] Prior to the opinion in **Hongo**, there was a conflict among the courts of appeal in this regard. For example, the third circuit in **State v. Pyke**, 93-1506 (La.App. 3 Cir. 5/4/94), 640 So.2d 460, 465, a case that defendant relies on in his *pro se* brief, held that the erroneous jury instruction that "intent to inflict great bodily harm" was an element of attempted murder mandated reversal and remand for retrial. Other circuits applied a harmless error test, upholding verdicts where there was overwhelming evidence to support the conviction and the erroneous instruction was not found prejudicial. **State v. Snyder**, 97-226 (La.App. 5 Cir. 9/30/97), 700 So.2d 1082, 1087; **Brunet**, 674 So.2d at 348; **State v. Harris**, 26,269 (La.App. 2 Cir. 9/21/94), 643 So.2d 779, 784, writ denied, 94-2607 (La. 2/17/95), 650 So.2d 251; **State v. Lyles**, 483 So.2d 1174, 1177 (La.App. 4 Cir.), writ denied, 488 So.2d 198 (La. 1986). The Louisiana Supreme Court in **Hongo** settled the issue, holding the erroneous jury instruction does not require an automatic remand, and an appellate court should apply a harmless error analysis. **Hongo**, 706 So.2d at 422.

the record.  **State v. Smith**, 600 So.2d 1319, 1326 (La. 1992).  Stated another way, the appropriate standard for determining harmless error is whether the guilty verdict was surely unattributable to the jury charge error.  **Sullivan v. Louisiana**, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993); **State v. Cooper**, 05-2070 (La.App. 1 Cir. 5/5/06), 935 So.2d 194, 200, writ denied, 06-1314 (La. 11/22/06), 942 So.2d 554.

In **Hongo**, the Louisiana Supreme Court noted that the trial court, as in the instant case, simply read from the definition of second degree murder followed by the definition of attempt when instructing the jury as to the elements of the crime.  **Hongo**, 706 So.2d at 420.  As the supreme court further noted, "The instant case is therefore dissimilar to **Butler**, wherein the State specifically argued intent to commit great bodily harm with numerous supporting rulings from the trial court."  **Hongo**, 706 So.2d at 421.  The supreme court in **Hongo** found that the erroneous jury charge therein would be subject to a harmless error analysis, stating as follows:

> Conversely, the erroneous instruction at issue merely added the improper additional element of "intent to inflict great bodily harm" along with the proper "intent to kill."  The jury is thus presented with the proper standard and may not be presented with evidence which could support the improper element.  In such a circumstance a reviewing court, following **Sullivan**, 508 U.S. at 279, 113 S.Ct. at 2081 can determine if the verdict is unattributable to the erroneous instruction.  Therefore, this error is not of such magnitude as to vitiate all jury findings and may well have had no effect whatsoever.

**Hongo**, 706 So.2d at 421-22.

In the case before us, the State presented evidence to show that defendant attempted to kill the victim.  There was no argument or evidence presented to the jury that would support a finding that defendant had the intent to only inflict great bodily harm.  Lebouef and Barnett consistently testified that after Lebouef pulled out his gun, defendant continued stabbing Burton.  One of the paramedics at the scene, Mitchell Webb of Acadian Ambulance, testified that Burton was bleeding so profusely that he was unable to stop the bleeding, though he was able to reduce it.  Among the multiple stab wounds, Webb noted that the wound to the upper right arm involved a serious arterial bleed.  Webb estimated that the victim had more than fifteen stab wounds.  We

further note that the photographs taken of the victim after the offense depict the serious injuries inflicted by defendant.

Early in his closing argument, the prosecutor stated, "Remember, I have to prove that this defendant, Jeremy Griner, attempted to kill Bradley Burton. That he acted with specific intent to kill." The State went on to present an extensive argument on the specific intent to kill, as to how the evidence proved beyond a reasonable doubt that defendant actively desired to kill Burton and "took every action he could" toward the accomplishment of Burton's death. For instance, the prosecutor stated, "Folks, when you stab somebody fifteen times in the head, the neck, and the back, what else are you trying to do?" Defense counsel, in her closing statement, argued that the evidence did not prove beyond a reasonable doubt that defendant had the specific intent to kill Burton. Defense counsel suggested that the number of wounds was not an indication of the specific intent to kill, contending that some of the stab wounds occurred inadvertently, as defendant and Burton were tussling while defendant was holding the knife. In his rebuttal closing argument, the prosecutor again emphasized that the number of stab wounds inflicted by defendant could only indicate that he had the specific intent to kill Burton.

In this case, defendant has failed to prove that the erroneous instruction at issue affected the unanimous verdict of guilty of attempted second degree murder. We find that the trial court's erroneous inclusion of the intent to inflict great bodily harm in the jury instruction did not prejudice defendant nor would its omission have affected the verdict. See **Hongo**, 706 So.2d at 422. Accordingly, while defendant's counsel was deficient in not objecting to the portion of the jury instructions at issue, defendant has failed to show any prejudice in this regard. Thus, counseled and pro se assignments of error number one, and counseled assignment of error number five, insofar as it challenges trial counsel's failure to object to the jury instruction at issue, are without merit.

### COUNSELED ASSIGNMENT OF ERROR NUMBER TWO

In counseled assignment of error number two, defendant argues that the trial court erred by sentencing him immediately after denying the post-trial motions. He

9

notes that after denying the motions, the trial court inquired as follows, "Your attorney wanted me [to] ask you personally if you're going to waive any sentencing delays at this point after I've ruled on your three motions." As defendant further notes, in response to the trial court's inquiry, he requested and was granted permission to express his remorse. Defendant argues that the sentence was imposed without a waiver of the sentencing delays and thus, the case must be remanded for resentencing.

Louisiana Code of Criminal Procedure article 873 provides that sentence shall not be imposed until at least twenty-four hours after the motion for new trial or in arrest of judgment is overruled, unless a defendant waives the delay. As defendant contends, when the trial court imposed the original sentence immediately following the denial of the post-trial motions in this case, the twenty-four hour sentencing delay was not observed.

Nonetheless, on a later date, defendant was adjudicated a habitual offender, the original sentence was vacated, and defendant was resentenced as a habitual offender. Therefore, the trial court's failure to observe the twenty-four hour delay before imposing the original sentence, as required by LSA-C.Cr.P. art. 873, is moot. See **State v. Carter**, 10-0421 (La.App. 1 Cir. 9/10/10), 2010 WL 3526519, at *3 n.2 (unpublished), writ denied, 13-0403 (7/31/13), 119 So.3d 597; see also **State v. Bentley**, 97-1552 (La.App. 4 Cir. 10/21/98), 728 So.2d 405, 408, writ denied, 98-3213 (La. 5/7/99), 741 So.2d 27 (wherein the court found the defendant failed to show he was prejudiced by the failure to observe the sentencing delay due to his original sentence being vacated when the defendant was adjudicated and resentenced as a habitual offender); **State v Brown**, 95-124 (La.App. 5 Cir. 5/30/95), 656 So.2d 1070, 1077 (wherein the court found the failure to observe the sentencing delay was rendered harmless upon the defendant's original sentence being set aside in the multiple offender proceeding). Counseled assignment of error number two lacks merit.

## COUNSELED ASSIGNMENTS OF ERROR NUMBERS THREE & FOUR,

## COUNSELED ASSIGNMENT OF ERROR NUMBER FIVE (IN PART), &

## PRO SE ASSIGNMENT OF ERROR NUMBER TWO

In a combined argument addressing counseled assignments of error numbers three, four, and partly five, defendant argues that the trial court erred by imposing an excessive sentence. Specifically in support of counseled assignment of error number three, he first contends that the State's evidence and/or the facts of the case do not support the sentence imposed. Defendant contends that he and the victim had a history of violence between them, that they had a fist fight the day of the stabbing incident, and that the victim threw the first punch at the time of the stabbing. He further submits that the record is devoid of anything regarding his background that would place him in the worst class of offenders or support the harshness of the sentence. He argues that his criminal history, consisting of a prior conviction of hit and run driving, does not involve premeditated criminal conduct and is otherwise insignificant. Defendant further contends that the trial court did not consider the fact that he was a single father who had sole custody of his young daughter. Thus, as specifically asserted in assignment of error number four, defendant argues that the trial court inadequately complied with the sentencing guidelines of LSA-C.Cr.P. art. 894.1. As also raised in *pro se* assignment of error number two, the counseled brief notes that the trial court did not order a presentence investigation report (PSI). In that regard, in his *pro se* brief, defendant argues that his case should be remanded to the trial court for resentencing.

Finally, regarding assignment of error number five, in part, defendant argues that his trial counsel's failure to file a motion to reconsider sentence constitutes ineffective assistance of counsel. He contends that there was no sound strategic reason for this omission, and that he was prejudiced due to the waiver of his right to appellate review of an "extremely harsh sentence."

As defendant concedes, the record does not contain an oral or written motion to reconsider sentence. Louisiana Code of Criminal Procedure article 881.1E provides that the failure to file or make a motion to reconsider sentence precludes a defendant from

11

raising an excessive sentence argument on appeal. Ordinarily, pursuant to the provisions of this article and the decision of **State v. Duncan**, 94-1563 (La.App. 1 Cir. 12/15/95), 667 So.2d 1141, 1143 (en banc) (per curiam), we would not consider an excessive sentence argument. However, in the interest of judicial economy, we will consider defendant's argument that his sentence is excessive, even in the absence of a motion to reconsider sentence, in order to address his claim of ineffective assistance of counsel. **State v. Collins**, 09-1617 (La.App. 1 Cir. 2/12/10), 35 So.3d 1103, 1107, writ denied, 10-0606 (La. 10/8/10), 46 So.3d 1265.

Failure to file a motion to reconsider sentence in itself does not constitute ineffective assistance of counsel. However, if the defendant can show a reasonable probability that, but for counsel's error, his sentence would have been different, a basis for an ineffective assistance claim may be found. **State v. Felder**, 00-2887 (La.App. 1 Cir. 9/28/01), 809 So.2d 360, 370, writ denied, 01-3027 (La. 10/25/02), 827 So.2d 1173.

Article I, Section 20 of the Louisiana Constitution prohibits the imposition of excessive punishment. Although a sentence may be within statutory limits, it may violate a defendant's constitutional right against excessive punishment and is subject to appellate review. **State v. Sepulvado**, 367 So.2d 762, 767 (La. 1979); **State v. Peters**, 17-0208 (La.App. 1 Cir 11/1/17), 233 So.3d 97, 99. A sentence is constitutionally excessive if it is grossly disproportionate to the severity of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. **State v. Hurst**, 99-2868 (La.App. 1 Cir. 10/3/00), 797 So.2d 75, 83, writ denied, 00–3053 (La. 10/5/01), 798 So.2d 962. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. A trial court is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed by it should not be set aside as excessive in the absence of manifest abuse of discretion. **Collins**, 35 So.3d at 1108.

Louisiana Code of Criminal Procedure article 894.1 sets forth the factors for the trial court to consider when imposing sentence. While the entire checklist of Article 894.1 need not be recited, the record must reflect that the trial court adequately

considered the criteria. In light of the criteria expressed by Article 894.1, a review for individual excessiveness should consider the circumstances of the crime and the trial court's stated reasons and factual basis for its sentencing decision. **State v. Brown**, 02-2231 (La.App. 1 Cir. 5/9/03), 849 So.2d 566, 569. Remand is unnecessary when a sufficient factual basis for the sentence is shown. **State v. Lanclos**, 419 So.2d 475, 478 (La. 1982); **State v. Graham**, 02-1492 (La.App. 1 Cir. 2/14/03), 845 So.2d 416, 422.

Herein, on his conviction of attempted second degree murder, defendant was exposed to a sentencing range of ten to fifty years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. LSA-R.S. 14:27D(1) and 14:30.1B. In accordance with the law in effect at the time of the offense, as a second felony offender, defendant faced an enhanced sentence of twenty-five to one hundred years imprisonment at hard labor. LSA-R.S. 14:27D(1) and 14:30.1B; LSA-R.S. 15:529.1A(1).[6] In this case, the trial court imposed a sentence of twenty-five years imprisonment at hard labor, the statutory minimum.

We note that there is no requirement that a PSI be conducted; such an investigation is more in the nature of an aid to the court, and not a right of the accused. See LSA-C.Cr.P. art. 875A(1); **State v. Howard**, 262 La. 270, 279, 263 So.2d 32, 35 (1972); **State v. Toups**, 13-1371 (La.App. 1 Cir. 4/3/14), 144 So.3d 1052, 1059 n.3. Prior to imposing the original sentence, the trial court considered the facts of the case, the unanimous verdict, the fact that the incident was captured on video, and a victim impact statement. The victim detailed the impact of the attack, including his need to undergo therapy with his daughters after his physical recovery and release from the hospital, and the nightmares that he experienced. He noted that his treatment was ongoing and that he finished his last surgical procedure, to repair the nerves in his arm, recently before the sentencing date. He further noted that he was reacquiring normal use of his hand, but that he may be permanently disabled. The victim further relayed the life threatening and near-death instances that he endured at

---

[6] Prior to the amendment of LSA-R.S. 15:529.1A(1) by Acts 2017, Nos. 257 and 282, §§ 1.

13

the hospital, as he was informed by his doctors, who, at some points, did not think that he would live.

In considering the Article 894.1(B) factors, we note that defendant's conduct during the commission of the offense manifested deliberate cruelty to the victim, that the offense may have resulted in significant permanent injury to the victim, and that defendant used a dangerous weapon in the commission of the offense. See LSA-C.Cr.P. art. 894.1B(1), (9), & (10). We find that the sentence imposed is not grossly disproportionate to the severity of the offense and, therefore, is not unconstitutionally excessive. Thus, the trial court did not err or abuse its discretion in imposing sentence. Because defendant's sentence is not excessive, defense counsel's failure to make or file a motion to reconsider sentence, even if constituting deficient performance, did not cause any prejudice to the defendant. See **Collins**, 35 So.3d at 1109. Therefore, the claim of ineffective assistance of counsel does not warrant relief. In accordance with the above, counseled assignments of error numbers three, four, and five, and pro se assignment of error number two lack merit.

## CONCLUSION

For the foregoing reasons, we affirm defendant's conviction, habitual offender adjudication, and sentence.

**CONVICTION, HABITUAL OFFENDER ADJUDICATION, AND SENTENCE AFFIRMED.**

14